## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **HOPE DAVILA,** | : | **CIVIL ACTION NO.** |
| *Plaintiff,* | : | **3:14-cv-569 (     )** |
| **vs.** | : | |
| **HUGH DOUGLAS,** | : | |
| *Defendant.* | | **April 28, 2014** |
| | : | |

## COMPLAINT

### I.   INTRODUCTION

1.      The plaintiff, Hope Davila, is a resident of the State of Connecticut.  She brings this action against defendant, Hugh Douglas, to redress injuries she suffered as a result of the defendant's harmful and offensive conduct.

### II.   JURISDICTION

2.      Jurisdiction is conferred on this Court by 28 U.S.C. Section 1332 and Section 1391.

### III.   VENUE

3.      Pursuant to 28 U.S.C. §1391(b), venue is proper within this District since the events alleged herein took place in Connecticut and all of the conduct underlying the plaintiff's claims occurred in Connecticut.

### IV.   PARTIES

4.      The plaintiff, Hope Davila, is a resident of Hartford, Connecticut.

5.      The defendant, Hugh Douglas, is a resident of Bryn Mawr, Pennsylvania.

1

**V.      FACTS**

6.      Prior to the events of September 22, 2013, Ms. Davila and Mr. Douglas had been involved in a romantic relationship for approximately eight months. Throughout their relationship Mr. Douglas kept the fact that he was married hidden from Ms. Davila.

7.      On September 22, 2013, Ms. Davila and Mr. Douglas had planned to spend the night together at Mr. Douglas's hotel room at the Marriott Hotel in Hartford, Connecticut.

8.      While in the hotel room Ms. Davila and Mr. Douglas quarreled and Ms. Davila decided to go home.

9.      Ms. Davila left Mr. Douglas' hotel room, walked down the hall and was about to enter the elevator when Mr. Douglas suddenly appeared and pulled her away from the elevator.

10.      Mr. Douglas then lifted Ms. Davila up by her neck and began "walking" her down the hall by the neck, with her legs dangling in the air, asphyxiating her.

11.      Mr. Douglas is six foot two and weighed approximately 280 pounds on the night of the assault.  Ms. Davila is five-foot-five and weighed approximately 125 pounds on the night of the assault.

12.      During the assault, Mr. Douglas repeatedly banged Ms. Davila's head against the hallway wall after which Ms. Davila lost consciousness.

13.      Ms. Davila briefly regained consciousness at the doorway to Mr. Douglas' hotel room as Mr. Douglas banged the back of Ms. Davila's head into the door's privacy latch and stated to her:  "That's what you get for not listening to me."  Ms. Davila lost consciousness again.

14.      When Ms. Davila regained consciousness for the second time, she was lying on the bed in Mr. Douglas's hotel room.

15.     Mr. Douglas was sweating and pacing back and forth.

16.     Ms. Davila was in pain and told Mr. Douglas that she wanted to go home.

17.     Mr. Douglas insisted that Ms. Davila stay and informed her she had a concussion. Mr. Douglas then had sex with Ms. Davila even though she was in no condition to be a willing participant.

18.     Mr. Douglas finally permitted Ms. Davila to leave the room.

19.     When Ms. Davila arrived in the hotel lobby she asked the concierge if there were video surveillance cameras in the hallway.

20.     The concierge, observing that Ms. Davila was distraught and had bruises all over her neck, asked if she was okay.

21.     Ms. Davila replied that she was not and that she had been assaulted.

22.     Although Ms. Davila wanted to go home, the concierge and hotel security convinced Ms. Davila to stay and called for the police and an ambulance.

23.     When the police arrived, Officer McCullough approached Ms. Davila.  He immediately noticed red marks on both sides of her neck and a bump on the back of her head. Ms. Davila initially stated to him that she just wanted to go home and that nothing happened. When Officer McCollough pressed her on her clearly visible injuries, she acknowledged that Mr. Douglas had indeed assaulted her but stated that she did not want anything to happen to Mr. Douglas.

24.     The police then questioned Mr. Douglas.  After he gave his version of the events, they arrested Mr. Douglas on felony strangulation and assault charges.

25.     The EMTs who arrived on the scene assessed Ms. Davila's condition.  Their record reveals their observations: "Patient has strangulation marks on her neck, as well as

abraisions [sic] on the back of her neck." Ms. Davila told the EMTs what had happened: "Patient stated she was in a hotel room with a friend, tried to leave, and the friend became angry, and choked her. Patient stated she woke up on the bed, with a baseball sized hematoma on the back left of her head."

26. The EMTs determined that they needed to take Ms. Davila to the hospital by ambulance. Ms. Davila was treated at the hospital for a concussion and a large hematoma to the back of her skull.

27. Her medical providers at Hartford Hospital asked Ms. Davila whether she wanted to have a rape kit performed. She declined.

28. On February 10, 2014, Mr. Douglas pleaded no contest to a misdemeanor in connection with his assault of Ms. Davila.

29. The attack in September 2013 was not the first time that Mr. Douglas assaulted Ms. Davila. In May 2013, while Ms. Davila was visiting Mr. Douglas at his apartment, she saw several signs that he was having a relationship with another woman. Ms. Davila accused Mr. Douglas of cheating on her. Ms. Davila gathered her belongings to leave the apartment, but Mr. Douglas physically stopped her from leaving. He choked her, threw her to the floor several times, smacked her repeatedly and dragged her around the floor.

30. Several months later, in August 2013, the two got into another argument at Mr. Douglas's apartment. Once again, when Ms. Davila decided to leave, Mr. Douglas got angry. He grabbed her and slung her onto his marble kitchen countertop, choking her against the counter.

31. Ms. Douglas assaulted Ms. Davila another time that same summer after he became angry at her because she did not want to leave a nightclub when he wanted to leave. As

soon as they got into his car and pulled out of the parking lot, Mr. Douglas yanked Ms. Davila by her ponytail and slammed her forehead on the dashboard.  In so doing, he pulled a chunk of her hair out and she sustained a bump on her forehead.

32.     Each time Dr. Douglas assaulted Ms. Davila he would apologize and promise not to do it again.  Ms. Davila cared deeply for Mr. Douglas and continued her relationship with him each time in the hope that he would keep his promise to her.

33.     On September 22, 2013, Mr. Douglas assaulted Ms. Davila so brutally, she thought he was going to kill her.

34.     Ms. Davila experienced pain in the back of her skull for months following the September 22nd assault and continues to suffer emotionally as a result of Mr. Douglas's conduct toward her.

35.     Ms. Davila also sustained out of pocket expenses for the medical treatment she received as a result of Mr. Douglas's conduct toward her.

## VI.     <u>COUNT ONE – Assault</u>

36.     Paragraphs 1 – 35 are hereby reincorporated the same as if fully pled in this First Count.

37.     On or about September 22, 2013, Mr. Douglas intentionally caused Ms. Davila to imminently apprehend that she would be subjected to harmful or offensive contact.

38.     Mr. Douglas acted with reckless indifference to Ms. Davila's rights or with an intentional and wanton violation of those rights.

39.     As a result of Mr. Douglas' conduct Ms. Davila suffered injury.

VII.   **COUNT TWO – Battery**

40.   Paragraphs 1 – 35 are hereby reincorporated the same as if fully pled in this Second Count.

41.   On or about September 22, 201, Mr. Douglas made harmful or offensive contact with Ms. Davila, to which she did not consent.

42.   Mr. Douglas acted with reckless indifference to Ms. Davila's rights or with an intentional and wanton violation of those rights.

43.   As a result of said contact, Ms. Davila suffered injury.

## VIII.   **PRAYER FOR RELIEF**

WHEREFORE, the plaintiff, Hope Davila, respectfully prays that this Court take jurisdiction over this case and grant judgment against defendant, Hugh Douglas.  The plaintiff prays that the following relief be ordered:

    a.   that the plaintiff be awarded the economic damages that she has suffered to date;

    b.   that the plaintiff be awarded damages for the physical harm she has suffered;

    c.   that plaintiff be awarded damages for the emotional harm she has suffered;

    d.   that plaintiff be awarded punitive damages; and

    e.   that plaintiff be awarded such other relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED,**
**THE PLAINTIFF**

By:   *_/s/ Nina T. Pi1rrotti_*
    Nina T. Pirrotti
    *Federal Bar No.:  ct26792*
    GARRISON, LEVIN-EPSTEIN, RICHARDSON,
        FITZGERALD & PIRROTTI, P.C.
    405 Orange Street
    New Haven, CT  06511
    Tel.:  (203) 777-4425 / Fax:  (203) 776-3965
    E-mail:  Npirrotti@garrisonlaw.com

and

    Gloria Allred  *(to be admitted phv)*
    Nathan Goldberg  *(to be admitted phv)*
    ALLRED, MAROKO & GOLDBERG
    6300 Wilshire Boulevard, Suite 1500
    Los Angeles, CA  90048
    Tel.:  (323) 302-4774 / Fax:  (323) 653-1660
    E-mail:  gallred@amglaw.com
        ngoldberg@amglaw.com

    COUNSEL FOR THE PLAINTIFFS

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **HOPE DAVILA,** | : | **CIVIL ACTION NO.** |
| *Plaintiff,* | : | **3:14-cv-569 (    )** |
| **vs.** | : | |
| **HUGH DOUGLAS,** | : | |
| *Defendant.* | | **April 28, 2014** |
| | : | |

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims so triable in this lawsuit.

**RESPECTFULLY SUBMITTED,**
**THE PLAINTIFF**

By:   */s/ Nina T. Pirrotti*
Nina T. Pirrotti
*Fed. Bar No.:  ct26792*
GARRISON, LEVIN-EPSTEIN, RICHARDSON,
      FITZGERALD & PIRROTTI, P.C.
405 Orange Street
New Haven, CT  06511
Tel.:  (203) 777-4425 / Fax:  (203) 776-3965
E-mail:  Npirrotti@garrisonlaw.com

and

Gloria Allred  *(to be admitted phv)*
Nathan Goldberg  *(to be admitted phv)*
ALLRED, MAROKO & GOLDBERG
6300 Wilshire Boulevard, Suite 1500
Los Angeles, CA  90048
Tel.:  (323) 302-4774 / Fax:  (323) 653-1660
E-mail:  gallred@amglaw.com
        ngoldberg@amglaw.com

COUNSEL FOR THE PLAINTIFFS

8